IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 14, 2004

## STATE OF TENNESSEE v. FERNANDO DEANDRA VAUGHN

**Direct Appeal from the Criminal Court for Sumner County**
**No. 782-2000    Jane Wheatcraft, Judge**

---

**No. M2004-00552-CCA-R3-CD - Filed February 16, 2005**

---

The defendant, Fernando Deandra Vaughn, appeals the revocation of his probation, arguing that the trial court erred by not waiting for the disposition of the drug charges against him before revoking his probation on the basis of those charges. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Charles R. Bobbitt, Jr., Hendersonville, Tennessee, for the appellant, Fernando Deandra Vaughn.

Paul G. Summers, Attorney General and Reporter; Preston Shipp, Assistant Attorney General; Lawrence R. Whitley, District Attorney General; and Dee Gay, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

From what we have been able to glean from the sparse record on appeal, the defendant entered best interest guilty pleas on January 31, 2001, to one count of aggravated assault and one count of attempted aggravated robbery, both Class C felonies, for which he was sentenced as a Range II, multiple offender to concurrent terms of six years in the Department of Correction, with the sentences suspended and the defendant placed on five years of supervised probation following service of twelve months in the Sumner County Jail. The judgment forms for these convictions

reflect that the defendant was ordered to serve the sentences consecutively to a sentence in another case, and the defendant's total period of probation was apparently eleven years.[1]

On September 2, 2003, a probation violation warrant was filed on the defendant alleging he had been arrested on August 29, 2003, and charged with possession of a Schedule II drug with the intent to sell and the introduction of a Schedule II drug into a penal institution. Two witnesses testified at the defendant's January 12, 2004, revocation hearing: the police officer who arrested the defendant on the drug charges and the correctional officer who discovered the drugs on the defendant's person during his strip search at the jail.

Gallatin Police Officer John Birdwell testified the defendant's drug arrest occurred as the result of a citizen complaint about drug activity occurring at 344 Union Park, a location where there was a "letter of no trespass" in effect, or a request from the property owner that the police department enforce the trespassing laws on the property. When Officer Birdwell arrived at that location, the defendant, who matched the description of the drug suspect, was sitting in a lawn chair in the driveway of the residence. After first ascertaining that the defendant had no business on the property, officers searched in a fence row five to ten feet from where the defendant was sitting and found a clear plastic bag containing one-and-one-half grams of crack cocaine, "in the exact spot that the complainant said it would be in." Officer Birdwell testified he cited the defendant for trespassing, arrested him for possession of a Schedule II drug for resale, and transported him to the jail, where 4.7 grams of a substance that field-tested positive for crack cocaine was found during the routine strip search of the defendant's person. Officer Birdwell stated he patted the defendant down before placing him in his patrol car and warned him before taking him into the jail that it was a felony to bring drugs into the jail. He said he also asked the defendant if he had any more drugs concealed on his person, and the defendant told him he did not. On cross-examination, Officer Birdwell acknowledged the residence where he arrested the defendant was in a known drug area and there was another individual present when he arrived at the scene.

Officer Predrag "Boz" Pajdak, a correctional officer with the Sumner County Sheriff's Department, testified that he and a fellow correctional officer found 4.7 grams of crack cocaine concealed in the defendant's buttocks as they strip-searched him following his August 29, 2003, arrest. According to Officer Pajdak, the defendant was asked three different times upon his entry into the jail if he had any drugs, drug paraphernalia, or weapons, and each time he replied that he did not. Officer Pajdak testified that no drugs were found in the defendant's pockets, but when the defendant eventually complied with their repeated instructions to bend over, spread the cheeks of his buttocks, and cough, he saw and removed a plastic bag of white powder from the defendant's buttocks, which was subsequently identified as containing 4.7 grams of crack cocaine.

---

[1]The probation violation warrant filed on the defendant states that he was convicted of attempted aggravated robbery, aggravated assault, and theft over $10,000, and was sentenced to eleven years probation. In addition, at the probation revocation hearing, the trial court stated that the defendant "was placed on probation on January 31, after having received a composite sentence of 11 years."

Based on the officers' testimony, the trial court found that the defendant had violated the terms of his probation by his arrest on drug charges. Accordingly, the court revoked the defendant's probation and ordered that he serve his sentences as originally imposed.

## ANALYSIS

The defendant contends that the trial court erred by not waiting for the disposition of his drug charges in criminal court before revoking his probation. In essence, he argues that our current procedure, by which a trial court may revoke a defendant's probation upon a finding that the defendant violated its terms by a preponderance of the evidence, is unfair to a defendant, who "could be framed for a crime that he did not commit, have his probation revoked, be sent to prison and then be acquitted." The State argues that it was clearly established by a preponderance of the evidence, the standard of proof required for a revocation of probation, that the defendant violated his probation by his possession of cocaine. We agree with the State.

A trial court is granted broad authority to revoke a suspended sentence and to reinstate the original sentence if it finds by the preponderance of the evidence that the defendant has violated the terms of his or her probation and suspension of sentence. Tenn. Code Ann. §§ 40-35-310, -311 (2003). The revocation of probation lies within the sound discretion of the trial court. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991); State v. Stubblefield, 953 S.W.2d 223, 226 (Tenn. Crim. App. 1997); State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). To show an abuse of discretion in a probation revocation case, "a defendant must demonstrate 'that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred.'" State v. Wall, 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994) (quoting State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)).

Although the defendant might wish otherwise, the proof of a probation violation need not be established beyond a reasonable doubt but is, instead, sufficient if it allows the trial court to make a conscientious and intelligent judgment. Harkins, 811 S.W.2d at 82 (citing State v. Milton, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984)). While a trial court may not rely upon a mere arrest or accusation to revoke probation, id. at 83 n.3, it may properly revoke a defendant's probation upon a finding by a preponderance of the evidence that the defendant has committed a breach of the laws of this state, see Tenn. Code Ann. § 40-35-311(a), (b), (e) (2003). Before revoking the defendant's probation, the trial court heard testimony from the arresting police officer about the circumstances surrounding the defendant's arrest, including the fact that the defendant was discovered trespassing on property on which the owner had signed a letter of no trespass with the police department, that the defendant matched the description of an individual a citizen had reported to be involved in drug activity at that location, and that a bag containing one-and-one-half grams of crack cocaine was found in a fence row near where the defendant was sitting, in the exact location the citizen informant said he had seen the defendant drop it. Furthermore, the court also heard detailed testimony from one of the two correctional officers who strip-searched the defendant following his arrival at the jail about the exact circumstances and location in which the officers found another bag of cocaine hidden

on the defendant's body.  This proof was clearly sufficient to show by a preponderance of the evidence that the defendant had violated the terms of his probation.

The defendant argues it would not have inconvenienced the trial court to wait for the disposition of his pending drug charges before revoking his probation and would, moreover, "have guaranteed that an innocent man would not be unjustly incarcerated."  However, he has apparently lost sight of the fact that the incarceration resulting from his revocation of probation is not a punishment for his still-pending drug charges but is, instead, a return to the original sentences he received in the Department of Correction for his 2001 *convictions*.  Probation is a privilege, not a right, see State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990), which the defendant lost by the criminal behavior he displayed on August 29, 2003.  Consequently, we find no abuse of discretion by the trial court in revoking the defendant's probation.

## CONCLUSION

Based on our review of the record, we conclude that the trial court did not abuse its discretion in revoking the defendant's probation.  Accordingly, the judgment of the trial court is affirmed.

_____
ALAN E. GLENN, JUDGE